UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------
Parent Doe 1, individually, and on behalf of his minor son, Current
Student Doe 1, and Parent Doe 2, individually, and on behalf of his
sons, Current Student Does 2, 3, and 4, on behalf of themselves and
all others similarly situated; and Former Student Doe 1; Former
Student Doe 2; Former Student Doe 3; Former Student Doe 4; and
Former Student Doe 5, individually, and on behalf of themselves
and all others similarly situated,

Plaintiffs,

-against-

The State of New York; New York Board of Regents of the
University of State of New York; the New York State Education
Department; MaryEllen Elia, as Commissioner of Education and
President of the University of the State of New York, in her official
capacity,

Defendants,

-and-

The East Ramapo Central School District ("ERCSD"); the ERCSD
Board of Education; Dr. Deborah Wortham, in her official capacity
as the Superintendent of the ERCSD; Congregation Yeshiva Avir
Yakov ("YAY"); Eluzer Moshel and Dov Goldman, in their
capacities as Principal/Administrators of YAY; United Talmudical
Academy (Spring Valley) ("UTA"); and Yiedel Spitzer, in his
capacity as Principal/Administrator of UTA; Yeshiva Darkei Emunah
("YDE"); Moshe Kohn, in his capacity as Principal/Administrator of
YDE; Yeshiva Tzion Yosef ("YTY"); and Ernest Schwartz, in his
capacity as Principal/Administrator of YTY,

As Necessary Party Defendants.

**CLASS ACTION
COMPLAINT**

**JURY DEMANDED**

Plaintiffs Parent Doe 1, individually, and on behalf of his minor son, Current Student Doe 1,

and Parent Doe 2, individually, and on behalf of his minor sons, Current Student Does 2, 3, and 4, on

behalf of themselves and all others similarly situated ("Parent Plaintiffs and Current Student

Plaintiffs"); and Plaintiffs Former Student Doe 1; Former Student Doe 2; Former Student Doe 3;

Former Student Doe 4; and Former Student Doe 5, individually, and on behalf themselves and all

others similarly situated ("Former Student Plaintiffs") (collectively "Plaintiffs"), by their attorneys,

Advocates for Justice and Advocates for Justice, Chartered Attorneys, as and for their Class Action Complaint against Defendants, the State of New York ("the State"); the New York Board of Regents of the University of the State of New York ("the Board of Regents" or "the Regents"); the New York State Education Department ("NYSED"); and MaryEllen Elia, as Commissioner of Education and President of the University of the State of New York ("Commissioner"); and as necessary party Defendants, the East Ramapo Central School District ("ERCSD" or "the District"); the ERCSD Board of Education ("the School Board"); Doctor Deborah Wortham, in her official capacity as the Superintendent of the ERCSD ("the Superintendent"); Congregation Yeshiva Avir Yakov, also known as Yeshiva Avir Yakov ("YAY"); Eluzer Moshel and Dov Goldman, as Principal/Administrators of YAY; United Talmudical Academy (Spring Valley) ("UTA"); and Yiedel Spitzer, as Principal/Administrator of UTA; Yeshiva Darkei Emunah ("YDE"); Moshe Kohn, as Principal/Administrator of YDE; Yeshiva Tzion Yosef ("YTY"); and Ernest Schwartz as Principal/Administrator of YTY (collectively "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.      In ultra-Orthodox/Hasidic communities, most schooling starts at age three, the beginning of what would be considered nursery school. From then until fourth grade (age 8 or 9), school is taught almost entirely in Yiddish. Students are taught to read and write in both Yiddish and Hebrew in order to better prepare them for their religious education – the study of the Torah and the Talmud. Secular education begins in the fourth grade through what would be considered the eighth grade, consisting of basic English and elementary Math, for a limited number of hours a week. For male students, all secular education ends once they reach their thirteenth birthdays. Thereafter, their religious education begins in earnest, and is devoted solely to the study of the Torah and the Talmud, as they begin to prepare for their adult life of religiosity.

2.      Although a religious education may be cherished as integral to the ultra-Orthodox/Hasidic community life, the consequence of not providing a secular education is that students are never given the opportunity to learn even the basic Three R's that all American children receive: reading, writing, and arithmetic. Because of their gender, male, and their religion, ultra-Orthodox/Hasidic, they have been and are being denied their right to receive a sound basic education as guaranteed by law. As a consequence, their lifelong earning power is greatly diminished, leaving many to become dependent on the public weal.

3.      Every parent has the right to choose a religious education for their children; and they are also entitled to receive a education substantially equivalent to that received by public school students. No parent or child should be forced to choose between substantive rights: the right to a religious education and the right to receive an education substantially equivalent to that received by public school students. Regardless of whether children attend religious school or public school, all children are entitled to receive a meaningful education – one that allows them the opportunity to become productive participants in our civic society – able to serve meaningfully on a jury, able to participate meaningfully in public debates, and able to participate meaningful at the voting booth.

4.      For generations, thousands upon thousands of young men in the ultra-Orthodox/Hasidic communities in Rockland County, New York, have been and are being purposefully denied what most consider a fundamental human right, embodied in the Constitution of the State of New York and in subsequent case law as a right to a "sound basic education". Generally, English is not taught until the fourth grade, when a very limited secular education begins. Only basic English and elementary Mathematics are provided by the schools that they attend, known as

yeshivas;[1] these secular studies occur at the end of a long eight or nine hour school day, for fewer than two hours, perhaps three times a week.

5.     At boys' yeshivas, attendance is not mandatory for secular education classes; if attended, students are permitted to converse, play games, or run around like children do. Few study the secular subjects in earnest largely because the English and Math offerings are eschewed rather than encouraged – as is secular education in general. Neither the Yeshiva administrators nor the teachers assigned to these secular classes support or value "modern" education. Instead, the leaders of the various sects of ultra-Orthodoxy/Hasidim consider secular education unnecessary to the adult life of men within their insular communities. Most, therefore, cease learning arithmetic or reading and writing English past the eighth-grade level. In today's world, that makes them essentially unemployable, as the experience of some Former Student Plaintiffs shows.

6.     This is an action to remedy the intentional discrimination and unequal treatment caused by Defendants' failure to oversee, monitor, or ensure that male yeshiva students are provided with a substantially equivalent education. Defendants purposefully discriminated and treated unequally these young men based on their gender and religion and failed to ensure equal protection under the laws. Defendants perpetuate their failure to provide an opportunity to learn by their continuous and deliberate unwillingness to deal with the problem. In the ERCSD alone, generation after generation of thousands of ultra-Orthodox/Hasidic yeshiva students fail to receive even a semblance of secular education, effectively dooming these young men to a life of functional illiteracy. And yet, Defendants' turn a blind eye.

---

[1] The term "yeshiva" is used to signify an Orthodox Jewish school; this term is used throughout the complaint and applies to all the "grades" the students attend.

7.     The harm this willful blindness has caused and continues to cause is almost

unimaginable. In American society, education is one of the many obligations citizens undertake

on behalf of our children. As the Supreme Court stated in *Brown v. Bd. of Educ.*,:

> "Today, education is perhaps the most important function of state and local governments.
> Compulsory school attendance laws and the great expenditures for education both
> demonstrate our recognition of the importance of education to our democratic society. It
> is required in the performance of our most basic public responsibilities, even service in
> the armed forces. It is the very foundation of good citizenship. Today it is a principal
> instrument in awakening the child to cultural values, in preparing him for later
> professional training, and in helping him to adjust normally to his environment. In these
> days, it is doubtful that any child may reasonably be expected to succeed in life if he is
> denied the opportunity of an education. Such an opportunity, where the state has
> undertaken to provide it, is a right which must be made available to all on equal terms."

8.     In our society, *"Education then, beyond all other devices of human origin, is a great

equalizer of the conditions of men -- the balance wheel of the social machinery."*[2] It is, therefore,

incumbent upon our State and local educational agencies to fulfill their fundamental promise to

provide the golden key to opportunity.

9.     New York State considered education so essential to its citizenry that it is explicitly

required by the State Constitution. Discussed in *Campaign for Fiscal Equity, Inc. v. New York*,

the New York Court of Appeals said,

> "We begin with a unanimous recognition of the importance of education in our
> democracy. The fundamental value of education is embedded in the Education Article of
> the New York State Constitution by this simple sentence: 'The legislature shall provide
> for the maintenance and support of a system of free common schools, wherein all the
> children of this state may be educated.'"

*Campaign for Fiscal Equity, Inc. v. State*, 100 N.Y.2d 893, 901 (2003) ("CFE 2003") (quoting

Article XI, Section 1 of the New York Constitution).

---

[2] Horace Mann, pioneering American educator, 1848.

10.     The Court of Appeals recognized that the State is constitutionally responsible "to ensure the availability of a 'sound basic education' to all its children and this Court is responsible for adjudicating the nature of that duty.'" *Id.* at 902. A "sound basic education" specifically includes minimally adequate facilities, instrumentalities of learning, and teaching:

> Children are also entitled to minimally adequate teaching of reasonably up-to-date basic curricula such as reading, writing, mathematics, science, and social students, by sufficient personnel adequately trained to teach those subject areas.

*Campaign for Fiscal Equity, Inc. v. State of New York*, 86 N.Y.2d 307, 317 (1995) ("CFE 1995"). Further, the Court found that "a sound basic education" must be measured in accordance with the demands of "modern society and include some preparation for employment." CFE 2003 at 905.

11.      The guarantees of equal protection, equitable funding, and a minimally adequate sound basic education for all students, free from discrimination and regardless of gender or religion, are thus enshrined in the United States Constitution, in the New York State Constitution, and by federal and State law.

12.     By ignoring their responsibilities to ensure these boys and young men receive an education, Defendants have pervasively them, and, as a natural extension, Defendants have failed the ultra-Orthodox/Hasidic communities and the towns and cities in which they grow up. Plaintiffs and those similarly situated simply lack essential knowledge to meaningfully participate in our democracy.

13.      Despite being aware of their individual and collective responsibilities to provide plaintiffs with a substantially equivalent education, defendants have knowingly, willfully, and consistently failed to comply with the law.

14.     Defendants have acted with deliberate indifference to the consequential harm they have caused and are causing by their willful blindness and deliberate refusal to acknowledge that yeshiva students need, require, and are legally entitled to, at the very least, a minimally adequate secular education in addition to their religious education within the District's yeshivas.

15.     Defendants have also individually and collectively failed to engage competent teachers and other staff capable of teaching yeshiva students the subjects required for a substantially equivalent secular education. Few English or Math teachers in the Yeshivas have any training or teaching licenses. Defendants have further failed to adequately train the teachers and staff who are engaged to teach yeshiva students the secular curriculum required for providing the students with a substantially equivalent education.

16.     By their individual and collective acts and omissions, Defendants have contributed to if not created a culture of ignorance that results in the certitude that generations of yeshiva students, once adults, become financially impoverished, have no alternative but to be sustained principally by public benefits, fail to obtain meaningful employment, and fail to become productive civic participants in our society.

17.     As exemplified by the plight of the former Plaintiff Students who have taken the life-altering step of leaving the ultra-Orthodox/Hasidic community, these young men have suffered and continue to suffer egregious injury, harm, and damage as a result of the lack of education.

18.     In this Complaint two classes of Plaintiffs are suing on behalf of themselves and all others similarly situated: (1) ultra-Orthodox/Hasidic parents on behalf of their sons who are ultra-Orthodox/Hasidic students attending religious schools, also called yeshivas, and (2) male individuals who are former ultra-Orthodox/Hasidic yeshiva students and who have attained the age of at least 18 years old.

19.     The action is brought in anonymity because Parent Plaintiffs and Former Student Plaintiffs are afraid to use their real names for fear that their communities will retaliate against them, since complaining to an outsider about community affairs is forbidden. Use of the court system is also a rare step for a member of the community; it too is forbidden in most circumstances. The ultra-Orthodox/Hasidic communities have their own religious courts to resolve disputes between them.

20.     Plaintiffs fear that retaliation will occur not just against them individually, but also against their families, who live and work in the community. They and their families risk being shunned or expelled from the community, having their businesses boycotted and ruined, suffering verbal threats and abuses, physical assault, and property damage.

21.     Plaintiffs seek declaratory relief declaring that Defendants the State, the Board of Regents, the NYSED, and its Commissioner, the ERCSD, its School Board and Superintendent, along with the ERCSD yeshivas, Congregation Yeshiva Avir Yakov, and its Principals/Administrators, Eluzer Moshel and Dov Goldman, United Talmudical Academy (Spring Valley), and its Principal/Administrator Yiedel Spitzer, Yeshiva Darkei Emunah, and its Principal/Administrator, Moshe Kohn; and Yeshiva Tzion Yosef and its Principal/Administrator Ernest Schwartz, individually and collectively, failed to provide every ERCSD yeshiva student with a "sound basic education," and failed to ensure them equal protection under the laws, including freedom from discrimination based on gender or religion.

22.     Plaintiffs also seek permanent injunctive relief enjoining the Defendants from unconstitutionally denying male yeshiva students an equal right to at least a minimally adequate education and from unconstitutionally and unlawfully withholding, misusing, misallocating, and

mismanaging federal funds (Title I, Title II, and Title III), state funds, and local funds and resources to which they are entitled.

23.     Further, Plaintiffs seek nominal, compensatory, and punitive damages to remedy the violations of the Equal Protection Clause of the Fourteenth Amendment of the United State Constitution, the Equal Educational Opportunity of 1974, the Equal Protection Clause of the New York State Constitution, the State Education Clause, and the State Education Law.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and the laws of the United States. Jurisdiction is also proper over Plaintiffs' claims under 28 U.S.C. § 2201-2202 because Plaintiffs seek a declaration of their civil rights. The Court has supplemental jurisdiction over Plaintiffs' related state law claims under 29 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims.

25.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because one or more of the Plaintiffs and Defendants reside within the Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within the judicial district.

## PARTIES

Plaintiffs

26.     Plaintiff Parent Doe 1, is a Satmar Hasidic parent suing on behalf of his minor son, Current Student Doe 1, who attends Yeshiva Darkei Emunah, located at 49 S. Main Street, Spring Valley, New York.

27.     Plaintiff Parent Doe 2 is a Satmar Hasidic parent suing on behalf of three minor sons, Current Student Does 2, 3, and 4, between ages 7 and 12, who all attend the Yeshiva Tzoin Yosef, located at 15 Widman Court, Spring Valley, New York.

28.     Plaintiff Former Student Doe 1 was raised as a member of the Satmar Hasidim, attended the United Talmudical Academy (Spring Valley) ("UTA"), and is now at least 18 years old.

29.     Plaintiff Former Student Doe 2 was raised as a member of the New Square Community Skver Hasidim, attended Yeshiva Avir Yakov, and is now at least 18 years old.

30.     Plaintiff Former Student Doe 3 was raised as a member of the New Square Community Skver Hasidim, attended Yeshiva Avir Yakov, and is now at least 18 years old.

31.     Plaintiff Former Student Doe 4 was raised as a member of the New Square Community Skver Hasidim, attended Yeshiva Avir Yakov, and is now at least 18 years old.

32.     Plaintiff Former Student Doe 5 was raised as a member of the New Square Community Skver Hasidim, attended Yeshiva Avir Yakov, and is now at least 18 years old.

<u>Defendants</u>

33.     Defendant the State of New York (the "State") is responsible for the operation, financing, and administration of the New York State public school system.

34.     Defendant Regents of the University of the State of New York ("Board of Regents") is established by the Constitution of the State of New York, art. XI, § 2; art. V, § 4. and is the head of the department of education. Pursuant to the power delegated to it by the New York Legislature, it exercises legislative and policy making powers of the state educational system, determines the educational policies for the State, and promulgates rules to effectuate New York State education laws and regulations. It appoints the Commissioner of Education to be the chief administrative officer of the department. N.Y. Const., art V, §4.

a. The Board of Regents, an executive department of the State, has offices located at the State Education Building, 89 Washington Avenue, Room 110, Albany, New York 12234.

35.     Defendant the New York State Education Department (the "NYSED") is an executive agency of the State. The NYSED implements the policies of the Board of Regents under the direction of the Commissioner of Education. Its offices are located at the State Education Building, 89 Washington Avenue, Room 110, Albany, New York 12234.

36.     Defendant Commissioner MaryEllen Elia is the President of the University of the State of New York and Commissioner of Education of the State of New York, and as such, is the chief executive officer of the Board of Regents and the State Education Department. She is sued herein in her official capacity.

37.     Defendant the East Ramapo Central School District Board of Education (the "School Board") is sued as a necessary party. It is responsible for the operation, financing, and administration of the public schools within the ERCSD. It is also responsible for overseeing the nonpublic schools within the District to *inter alia* ensure that its students receive a "substantially equivalent education" to that of the local public schools.

38.     Defendant Doctor Deborah Wortham is sued as a necessary party in her official capacity as the ERCSD's Superintendent.

39.     Defendant Congregation Yeshiva Avir Yakov, also known as Yeshiva Avir Yakov ("YAY"), is sued as a necessary party. It is a private religious school within the ERCSD, located at 766 N. Main Street, Spring Valley, New York. YAY is responsible *inter alia* to ensure that its students receive a "substantially equivalent education" to that of the students in local public schools.

    a.   Upon information and belief YAY is not a registered school with NYSED.

    b.   Upon information and belief, YAY does not offer a regents diploma, or any other equivalent academic diploma.

40.    Defendant United Talmudical Academy (Monsey) ("UTA") is sued as a necessary party. It is a private religious school within the ERCSD, located at 89 S. Main Street, Spring Valley, New York. UTA is responsible *inter alia* to ensure that its students receive a "substantially equivalent education" to that of the students in local public schools.

    a.   Upon information and belief UTA is not a registered school with NYSED.

    b.   Upon information and belief, UTA does not offer a regents diploma, or any other equivalent academic diploma.

41.    Defendant Yeshiva Darkei Emunah ("YDE") is sued here as a necessary party. YDE is a private religious school within ERCSD, located at 49 S. Main Street, Spring Valley, New York 10977.

    a.   Upon information and belief YDE is not a registered school with the State of New York.

    b.   Upon information and belief, YDE does not offer a regents diploma, or any other equivalent academic diploma.

42.    Defendant Yeshiva Tzion Yosef ("YTY") is sued here as a necessary party. YTY is a private religious school within ERCSD, located at 4 Widman Court, Spring Valley, New York 10977.

    a.   Upon information and belief YTY is not a registered school with the State of New York.

      b.   Upon information and belief, YTY does not offer a regents diploma, or any other equivalent academic diploma.

43.    Defendant Eluzer Moshel is sued as a necessary party in his capacity as Principal/Administrator of Congregation Yeshiva Avir Yakov.

44.    Defendant Dov Goldman is sued as a necessary party as the Principal/Administrator of Congregation Yeshiva Avir Yakov.

45.    Defendant Yidel Spitzer is sued as a necessary party in his capacity as Principal/Administrator of United Talmudical Academy.

46.    Defendant Moshe Kohn is sued as a necessary party in his capacity as Principal/Administrator of Yeshiva Darkei Emunah.

47.    Defendant Ernest Schwartz is sued as a necessary party in his capacity as Principal/Administrator of Yeshiva Tzion Yosef.

East Ramapo Central School District

48.    ERCSD is comprised of two distinct educational communities: two-thirds of the Defendant District's students - approximately 22,000 students, attend its nonpublic religious schools. One third, approximately 9,000 students, attend its public schools.[3]

49.    Most of the students attending nonpublic schools attend the District's approximately 80 yeshivas. These students are ultra-Orthodox/Hasidic, exclusively White. Most students speak Yiddish; for many, Yiddish is their primary language.

---

[3] There are 12 schools within the District's public schools. These children are primarily poor black and Hispanic students. The public school students are neither Hasidic nor ultra-Orthodox. A significant number speak a language other than English at home, e.g., Haitian (Creole) or Spanish.

50.     In accord with their religious tenets, yeshiva students are segregated by gender and educated separately; they are bused separately to school as well.

The Skver Hasidim

51.     Over the past few decades, a certain segment of New York's Jews have been moving to Rockland County, New York. Communities started with New Square, a settlement within the town of Ramapo, founded by Rabbi Yakov Yosef Twersky of the Skver Hasidic dynasty in 1954. Originating in the 18th century, the Skver Hasidic sect is named after the Ukrainian town Skver, near Kiev. The New Square village was founded in an attempt to re-create the social, political, and economic systems as they imagined they existed in their 18th century ancestors' homeland and apart from the impact of modern American culture. The village of New Square is often described as a highly insular Hasidic shtetl, regulated by particular restrictions. For example, gender separation is practiced, including for children's schooling. The strict regulations help maintain the extreme homogeneity of the village. Today, New Square is the center of the sect with a population of approximately 7,000 residents, almost all of whom are Skver Hasidim.[4]

The Satmar Hasidim

52.     Satmar Hasidism is a branch of ultra-Orthodox Judaism founded by Rabbi Moshe Teitelbaum (1759-1841). Rabbi Yoel Teitelbaum (1887-1979), one of Rabbi Moshe Teitelbaum descendents, established the foundations of a Satmar Hasidic community in Williamsburg, Brooklyn. In the 1970s, he bought land in upstate New York and founded a Satmar Hasidic

---

[4] Jerome Mintz 1992, Hasidic People: A Place in the New World, 198-205; US Census bureau 2011 data at http://quickfacts.census.gov/qfd/states/36/3650705.html, last visited April 9, 2015. Andrew Tobin, *New Square: Where tradition and the rebbe rule*. The Jewish Daily Forward, June 8, 2011 at http://forward.com/articles/138472/new-square- where-tradition-and-the-rebbe-rule/, last visited April 9, 2015

community called Kiryas Joel. Other Satmar communities were founded in Monsey, which is within the ERCSD, Boro Park, and elsewhere throughout the world. Like other Haredi Jews, Satmar Hasidic Jews live in insular communities, separating themselves from contemporary, secular society. The "Hasidim also maintain a language barrier against the non-Hasidic world. Just as Hasidic dress serves as a visual marker of separation, so the sound of Yiddish serves as an aural one."[5] Satmar, one of the stricter sects, for instance, places little value on the study of English. Most secular education is distained in favor of minimal technical training for jobs that keep Hasidim within or close to the community.

## APPLICABLE LAWS AND POLICIES

### Equal Protection

53.    The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

### The Right to Equal Educational Opportunities

54.    Section 1703(f) of the Equal Educational Opportunities Act of 1974 ("EEOA") requires that state educational agencies ("SEAs") and school districts take action to overcome language barriers that impede English Language Learner ("ELL") students from participating equally in school districts' educational programs.

### The Right to A Substantially Equivalent Education

55.     The "Education Clause," found in Article XI, section 1 of the New York State Constitution, provides that "the legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y.

---

[5] A Life Apart, CITE.

Const. art. XI, § 1. This provision is not a mere platitude or an abstract ambition that the State has no obligation to fulfill. It is a mandate the State is constitutionally obligated to execute and accomplish for all New York children.

56.     The Court in *Bd. of Educ. v. Nyquist*, 57 N.Y.2d 27, (1982), clarified that the "Education Clause" ensures the availability of a "sound basic education" to all children in the State. This "constitutional floor with respect to educational adequacy" was further explained by CFE 1995. There, the Court upheld the basic rights of children to obtain "the basic literacy, calculating, and verbal skills necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury." CFE 1995 at 316.

57.     The Education Clause creates the right to adequate instruction along with all the resources that such instruction requires. Although the law compels attendance in school, parents are free to educate their children in public school or religious school so long as the child meets the mandatory attendance requirements. If the child goes to a private religious school, he or she retains the same right to an education that a child in public school has: the right to receive a substantially equivalent education to that received in public school.

**New York State Law Requires A Substantially Equivalent Education**

58.     New York Education Law §§ 3204.1 and 2 provide: "A minor required to attend upon instruction by the provisions of part one of this article may attend at a public school or elsewhere. The requirements of this section shall apply to such a minor, irrespective of the place of instruction."

59.     The law further mandates the quality of the instruction provided. Specifically, "[i]nstruction may be given only by a competent teacher." "The purpose of providing such pupils

with instruction shall be to enable them to develop academically while achieving competence in the English language."

60.     Instruction given to a minor elsewhere than in a public school must be substantially equivalent to the instruction given at the local public school in the District where the child resides. N.Y. Educ. Law § 3204.2.

61.     The curriculum for grades one through eight must include arithmetic, reading, spelling, writing, the English language, geography, United States history, civics, hygiene, physical training, the history of New York State, and science. N.Y. Educ. Law § 3204.3.

62.     Beyond the first eight years, academic instruction must include the English language and its use, civics, hygiene, physical training, American history including the Declaration of Independence and the Constitution of the United States, and may include a course in communism and its methods and its destructive effects. *Ibid.*

63.     English is the language of instruction, and textbooks used must be written in English, except for a limited time for students with limited English proficiency. N.Y. Educ. Law § 3204.2.

64.     As part of health education, all schools must provide instruction to discourage the misuse and abuse of alcohol, tobacco, and other drugs; and promote attitudes and behavior that enhance health, well-being, and human dignity. N.Y. Educ. Law § 804.[6]

65.     Private schools offering instruction deemed substantially equivalent to public schools must offer courses of instruction in patriotism, citizenship, and human rights issues (with particular attention to the study of the inhumanity of genocide, slavery, and the Holocaust) for

---

[6] Students may be excused from health and hygiene if it conflicts with their parent or guardian's religion and is certified by a representative of their religion. N.Y. Educ. Law § 3204.5.

students over 8 years old, and instruction in the Constitution of the United States and New York and the Declaration of Independence for students in grades eight through 12. N.Y. Educ. Law § 801.1, 2.

66.     Similar physical education courses to those required of public schools shall be prescribed and maintained in private schools in the state, and all pupils in grades kindergarten through 12 shall attend such courses. 8 CCR-NY 135.4.

67.     Private and parochial schools must provide instruction in fire and arson prevention as prescribed by the commissioner of education. Instruction must be given at least 45 minutes every month while school is in session. N.Y. Educ. Law § 808.

68.     Private schools offering instruction deemed substantially equivalent to public schools must offer instruction in highway safety and traffic regulations, including bicycle safety. N.Y. Educ. Law § 806.1.

69.     A registered nonpublic school operating prekindergarten and/or kindergarten programs must adopt and implement curricula aligned with the state learning standards that provide continuity to the instruction of early elementary grades and through grade 12.[7]

70.     Nonpublic schools must provide a comprehensive assessment report for the three school years prior to the reporting school year. The report must include student test data, student enrollment, data on diplomas and certificates, information on the number of students transferred to alternative high schools, high school equivalency preparation programs as described in 8 CCR-NY 100.7, and additional information the chief administrative office of the nonpublic school finds relevant or the commissioner requests. 8 CCR-NY 100.2 (m)(5).

---

[7] Information on the standards to be included can be found in 8 CRR-NY 100.3.

**Defendants Fail Pervasively to Educate East Ramapo Male Yeshiva Students**

71.     Defendants State, the Regents, the NYSED, and the Commissioner are responsible for the pervasive failure to oversee, monitor, and ensure that yeshiva students in the ERCSD receive a sound basic education as required by the U.S. Constitution, the State Constitution, and federal and state laws.

72.     The District, its School Board, and its Superintendent are responsible to oversee, monitor and ensure that that Plaintiffs are or were provided with a sound basic education, including all the necessary instruction and educational resources that are required by the U.S. Constitution, the State Constitution, and federal and state laws.

73.     Defendant Yeshivas and their respective Principals/Administrators are responsible for providing Student Plaintiffs with a sound basic education, including all the necessary instruction and educational resources that are required by the U.S. Constitution, the State Constitution, and federal and state laws.

74.     Defendants have obligations and responsibilities to ensure that Defendant Yeshivas have adequate resources and actually teach the basic literacy, calculating, and verbal skills necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury. This standard is the constitutional minimum or floor.

75.     The State has exclusive statutory responsibility to educate its citizenry by virtue of its compulsory education law.

76.     Defendants failed in their obligations and responsibilities, individually and collectively, to ensure that Student Plaintiffs, both current and former, were provided with minimally adequate teachers competent to teach them the secular subjects they are and were required to provide according to federal and state law.

77.     Defendants individually and collectively failed to meet their required obligations and responsibilities and, as a consequence, Student Plaintiffs were not provided with a sound basic education; were not provided with adequately trained teachers and other staff who could teach them their required curricula; and were not provided with educational resources such as books and other materials necessary for such required instruction.

78.     In determining the adequacy of education, a sound basic education requires schools to have teachers with sufficient teaching skills to instruct students so as to enable them to be able to undertake their civil responsibilities in a meaningful manner.

79.     Schools must provide the opportunity for a meaningful education, which is one that prepares students to function as productive civic participants.

80.     By failing to require Defendant Yeshivas to utilize competent teachers, Defendants have failed to provide Student Plaintiffs with the opportunity to have a meaningful education.

81.     By failing to require Defendant Yeshivas to teach in English, unless their students were properly classified as ESL or ELL students, Defendants have failed to provide Student Plaintiffs with the opportunity to have a meaningful education.

82.     By failing to require yeshivas to use textbooks, which upon information and belief Defendant Yeshivas receive from the ERCSD, for the proper instruction of the required subjects, Defendants have failed to provide Student Plaintiffs with the opportunity to have a meaningful education.

83.     Defendants have failed to enforce the requirement that necessary subjects be taught in English, unless the students are properly classified as ESL or ELL students. Upon information and belief, the students attending Defendant Yeshivas were not and are not properly or legitimately being classified as ESL or ELL students.

84.     At all relevant times, none of these Current Student Plaintiffs are receiving or did receive a sound basic education during any and all the years they attended Defendant Yeshivas. Specifically, they do not and have not received the required course instruction mandated by state law.

85.     At all relevant times herein, none of the Former Student Plaintiffs received a sound basic education during any and all the years they attended yeshiva. Specifically, they did not receive the required course instruction mandated by state law.

**Defendants Failure to Educate Denies**
**Male Yeshiva Students Equal Protection of the Law**

86.     Defendants' failure to ensure plaintiffs are provided with a sound basic education, as compared with similarly situated students in traditional public schools, or with similarly situated students in other religious schools, or even with ultra-Orthodox/Hasidic girls schools, violates the Equal Protection Clause of the Fourteenth Amendment and violates New York's equal protection clause.

87.     New York State Const., Art. I, § 11 provides:

> No person shall be denied the equal protection of the laws in this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

88.     In New York, education is an essential civil right. N.Y. Exec. Law § 291(2): "The opportunity to obtain education … without discrimination because of age, race, creed, color, national origin, sex orientation, military status, or marital status, as specified in section two hundred ninety-six of this article, is hereby recognized as and declared to be a civil right."

89.     Defendants acts and omissions in failing to oversee, monitor, and ensure plaintiffs received a sound basic education, created unequal, unfair, and discriminatory yeshivas. Gross

disparities exist between comparative local public schools, or other non-ultra/Orthodox religious schools, or ultra-Orthodox/Hasidic girls schools and the adequacy of the secular education male yeshiva students receive, including but not limited to class time allotted, class work provided, subjects offered, and competent or accredited teachers assigned. Male yeshiva students are grossly short-changed by the lack of educational services they receive. The situation remains untenable and legally indefensible as a matter of constitutional equality.

90.     The lack of secular education Defendants caused violates the constitutional rights of Plaintiffs to equal educational opportunities in violation of the Fourteenth Amendment and New York State Const., Art. I, § 11. Plaintiffs have been denied equal treatment under the law and have been damaged by Defendants' unequal and discriminatory failures to provide Plaintiffs with an adequate secular education.

**Defendants Failure to Educate Has
a Disparate Impact on Male Yeshiva Students**

91.     Under New York law, the opportunity to obtain an education, without discrimination, is a civil right.

92.     Defendants acts and omissions in failing to oversee, monitor, and ensure plaintiffs received a sound basic education, has a discriminatory impact on all male yeshivas and male yeshiva students. Comparative local public schools, or other non-ultra/Orthodox religious schools, or ultra-Orthodox/Hasidic girls schools at least receive secular education, which the male yeshiva students do not, including but not limited to class time allotted, class work provided, subjects offered, and competent or accredited teachers assigned. Male yeshiva students are grossly short-changed by the lack of educational services they received. The situation remains untenable and legally indefensible as a matter of constitutional equality.

**Defendants Fail to Oversee, Monitor, or Control**
**Yeshiva Usage of Federal, State, and Local Funds**

93.     In 2008, New York restructured its funding formula for traditional public schools. Under the new formula, approximately 8% of the funding comes from the federal government, about 40% from the State government, and 52% from the local school district. The formula specifies a per pupil expense for which the State and local districts provide funding. The per pupil expense is in part one of the reasons schools, including private schools like Defendant Yeshivas, must maintain accurate registers of students' enrolled, and accurate attendance records.

94.     Upon information and belief, Defendant Yeshivas receive federal, State and local education funds, including what are  known as Title I, Title II, and Title III funds, federal and State education grants, State and local taxes, and  monies from other funding sources, including from private tuition sources, all of which make up the educational funds. Regardless, however, of the spectrum of funding Defendant Yeshivas receive they are required to provide an equivalent education to the Student Plaintiffs whether they qualify for grants or federal funding or not. The grants are intended to supplement secular education, not supplant it, and certainly are not to be used for religious education.

95.     Upon information and belief, Defendant Yeshivas receive resources from the ERCSD, including busing services, textbooks and other educational materials, computer software and other computer related educational materials that are not being used or are not being effectively used to provide Student Plaintiffs with a statutorily required equivalent education.

96.     Defendant Yeshivas utilize these funds and educational resources in the administration of these schools, and are legally responsible to use these resources in furtherance of providing Student Plaintiffs with an equivalent secular education.

97.      Upon information and belief, the service providers, including Yeshiva Association of Rockland County ("YARC") and Community Education Center ("CEC"), are failing and have failed to use the funds provided for legitimate secular education purposes at Defendant Yeshivas, and Defendant District and Board have failed to properly oversee or monitor the use of these funds to ensure they are being used to supplement secular education, not supplant it, and ensure that the funds are not being used for religious education purposes.

**Hasidic Parents Have No Realistic School Choice**

98.      Presumptively, and one would reason that, ultra-Orthodox Parent Plaintiffs are able to choose where to send their children to be educated. However, these Parent Plaintiffs have no real school choice other than to enroll their children in private yeshivas that correlate to their sect's education mandates. The community in which they live demands adherence to its religious and societal rules and norms. To deviate from them, even in the slightest, relegates Parent Plaintiffs and their children to shunning, if not potential or actual expulsion from the community and/or physical harm.

99.      Defendant Yeshivas present a false choice to Parent Plaintiffs: either its students are provided with a religious education or a secular one but not both. This false dichotomy must be dispelled and can only occur with the assistance, oversight, and monitoring of the other Defendants, all of whom were and are obligated to ensure that these children receive a constitutionally and statutorily mandated sound basic education.

100.    There exist no impediments to the establishment of legitimate classes in reading, English, and math, to begin with. Currently though, as it was when Former Student Plaintiffs attended Defendant Yeshivas, any secular education Defendant Yeshivas provided was relegated to the end of a long school day, when the children are exhausted from eight to nine hours at school.

101.    Plaintiff Students are and were improperly offered a choice as to whether they wanted to study the secular subjects offered by Defendant Yeshivas. The Defendant Yeshivas do not and did not require students to participate in secular studies or to perform according to or up to any standard. The attitude of the administration and the teachers who do and did little more than babysit these classes, is and was one of intolerance of non-Judaic studies, projecting attitudes that these subjects are unnecessary to life within the communities; that these subjects are forbidden and not sanctioned by the Rebbes or the school administration.

102.    As a result, during class time allocated for secular studies, students played or ignored instruction rather than attempting to learn or work on the assignments that might have been offered for appearance purposes only and not because the students would be held accountable to any objective standard or would experience any consequence for not engaging in the required assignments.

103.    Without any measure of discipline or order in these classrooms, students are and were free to engage in playtime, and indeed many do so and did so, relieved of the mandates of structured learning that accompany their Torah and Talmudic studies.

**Plaintiffs Are Suffering and Did Suffer**
**<u>Pervasive Injuries, Damages, and Harm</u>**

104.    As a result of Defendants' failures, the Student Plaintiffs and other ultra-Orthodox/Hasidic children of the ERCSD have been denied the sound basic education to which they are constitutionally and statutorily entitled.

105.    Specifically, Student Plaintiffs have been and are being denied basic secular studies, including classes in language arts, mathematics, science, social studies.

106.    Student Plaintiffs have been and are being denied teachers competent to teach any of these secular subjects.

107.    Plaintiffs have been and are being denied dedicated class time within which to learn any of the required secular subjects.

108.    Current Student Plaintiffs are not receiving any of these secular subjects and can barely read or write English without substantial assistance and are far behind their peers in public school.

109.    Without a substantially equivalent education, yeshiva students are doomed to suffer a variety of injuries, damages, and harm, including enduring a lifetime of ignorance, as well as an inability to read or write English, perform rudimentary mathematical calculations, gain admittance to higher education, obtain and maintain employment, participate in their civic responsibilities, or become productive and active citizens.

110.    Each Former Student Plaintiff suffered tremendous personal injuries, including the inability to sufficiently read or write English; they could not perform rudimentary math calculations; could not complete an employment application or apply for social services without assistance; did not have a high school diploma; could not obtain a job that required any reading or writing; did not learn basic science, including, for example, sufficient to understand that the word "continents" or what it meant. Quite simply, they lacked the basic language tools necessary to read or write on even the most elementary level without significant assistance.

111.    These Former Student Plaintiffs suffered psychological, emotional, and physical harm, including experiencing depression, feelings of worthlessness, loss of hope, anxiety, a loss of family, and emotional support.

112.    The loss of education during childhood cannot be replaced. Former Student Plaintiffs can seek adult education and try mightily to make up for all the years they were denied the opportunity to become educated. This struggle should not be necessary. This action holds

Defendants accountable for the egregious harm their acts and omissions have caused and attempts to prevent future children from suffering the same fate.

**Relief Requested**

113.    Recognizing that an immediate order of compliance with the law might cause culture shock and may be difficult to implement and even more difficult to enforce, Plaintiffs seek a graduated introduction of secular subjects into Defendant Yeshivas' curricula, so long as the teachers engaged by the Defendant Yeshivas are qualified to teach the subject matter that they are assigned, and that the schools provide these teachers with the resources and support they require to command the respect of the Defendants' school systems and their respective students.

114.    Defendants should provide a minimum of three (3) hours of secular education instruction per day in Defendant Yeshivas, which is reasonable during the course of a eight or nine hour school day.

115.    Defendant State should be required to develop, in the first instance, an enforcement mechanism to ensure that Defendant Yeshivas provide a substantially equivalent education to which their students are entitled.

116.    Defendant NYSED should be required to ensure these standards are being met. Until it does so, Defendant NYSED is failing in one of its core missions – to ensure that all of New York children receive a sound basic education. This responsibility is not a matter of choice. It is a necessary obligation to ensure that the children of New York State receive a substantially equivalent education so that they may take their place in a literate, educated society, capable of exercising their right to vote, their right to sit as a juror in a court of law, their right to participate in commerce.

117.    Defendants State and the Commissioner must develop a program for Former Student Plaintiffs to remediate the ongoing harm that has been inflicted upon them by the failure to properly educate them.

118.    Defendants State and the Commissioner must develop mechanisms by which they can legitimately oversee and, if necessary, inspect the Defendant Yeshivas to ensure that Current Student Plaintiffs receive and continue to receive a substantially equivalent education.

**AS AND FOR A FIRST
CLAIM FOR RELIEF**

**(DENIAL OF FEDERALLY GUARANTEED EQUAL PROTECTION)**

119.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs of the Complaint as if set forth here in full.

120.    As described above, Defendants failed to provide Student Plaintiffs with the opportunity for a sufficiently equivalent education while permitting and/or ensuring that public school students were given the opportunity for a sound basic education.

121.    Defendants acted with deliberate indifference to the effects of their failures had on Student Plaintiffs.

122.    Defendants acted under color of state law in the commission of the above-alleged acts with discriminatory animus.

123.    By their above-alleged acts, Defendants denied Parent Plaintiffs and their Student Plaintiffs equal protection of the laws on the basis of gender or religion in violation of the Fourteenth Amendment to the United States Constitution.

**AS AND FOR A SECOND
CLAIM FOR RELIEF**

**(DENIAL OF NEW YORK STATE GUARANTEED EQUAL PROTECTION)**

124.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs of the Complaint as if set forth here in full.

125.    As described above, Defendants also denied Parent Plaintiffs and Student Plaintiffs equal protection of the laws as guaranteed by Art. I, § 11 of the New York State Constitution.

126.    Education is an essential civil right.

127.    Defendants' failure to provide a sound basic education to male yeshiva students is unconstitutional and in violation of the New York State Constitution's guarantee of equal protection under the law.

## AS AND FOR A THIRD
## CLAIM FOR RELIEF

### Disparate Impact

128.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs of the Complaint as if set forth here in full.

129.    In New York, the opportunity to obtain an education, without discrimination, is a civil right.

130.    All students attending public schools in the District have an opportunity to receive a sound basic education.

131.    All students in non-ultra-Orthodox private schools have an opportunity to receive a sound basic education.

132.    All female yeshiva students private religious schools have an opportunity to receive a sound basic education.

133.    Defendants' failures, individually and collectively, by their acts and omissions have denied the male yeshiva students an opportunity for a sound basic education and created an

inequitable, disparate and disproportionate impact on the education of male yeshiva students and is therefore unconstitutionally discriminatory.

## AS AND FOR A THIRD
## CLAIM FOR RELIEF

### (DENIAL OF A SUBSTANTIALLY EQUIVALENT EDUCATION)

134.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs of the Complaint as if set forth here in full.

135.    Defendants failed to satisfy the Constitutional mandate set forth in N.Y. Const., Art. XI, § 1, by failing to oversee, maintain, or ensure that Student Plaintiffs received a substantially equivalent education.

WHEREFORE, Plaintiffs demand an order and judgment in their favor and pray for relief against Defendants as follows:

A.    Declare that the Defendants have failed to comply with the constitutional requirements of the Fourteenth Amendment; the N.Y. Equal Rights Clause; the N.Y. Education Clause at Art. XI, § 1; the N.Y. Civil Rights Law; the Education Law; and

B.    Order Defendants to no later than 2016-2017 school year to either (a) fully comply with the laws set forth above and provide male yeshiva students with a sound basic education that meets constitutional requirements; and, (b) develop and implement an effective oversight and monitoring mechanism to determine and enforce compliance with the law; and

C.    For an order granting all Plaintiffs nominal and compensatory damages against Defendants for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

D.    For an order granting each Plaintiffs statutory damages against each Defendant for each violation of the New York Civil Rights Law §§ 40-c and 40-d; and

E.         For a permanent injunction restraining and enjoining Defendants from failing to adequately provide to Current Student Plaintiffs and others similarly situated students, a substantially equivalent education;

F.         For a permanent injunction ordering Defendants to stop engaging in unconstitutional and unlawful acts, and to develop policies and procedures for ending such unconstitutional and unlawful acts, including but not limited to the following:

a.   Require Defendants to implement mandatory and effective training programs for Defendant Yeshiva teachers and staff and for any service providers to enable them to provide Yeshiva Students with required secular subjects necessary to provide each student with a substantially equivalent education.

b.   Require Defendant School District to assign a staff members to actively monitor Defendant Yeshivas to ensure that each student is being provided with a substantially equivalent education.

G.         Awarding Plaintiffs all costs and fees associated with bringing this action, including attorneys' fees and costs, including pre-judgment and post-judgment interest; and

H.         Awarding such other and further relief as this Court may deem just and proper.

November 19, 2015
New York, New York

**ADVOCATES FOR JUSTICE**
**CHARTERED ATTORNEYS**
*/s/Arthur Z. Schwartz*
Arthur Z. Schwartz
Attorneys for Plaintiffs
225 Broadway, Suite 1902
New York, NY 10007
Office: (212) 285-1400
Cell: (917) 923-8136
aschwartz@afjlaw.com

**ADVOCATES FOR JUSTICE**

*/s/Laura D. Barbieri*
Laura D. Barbieri
Attorneys for Plaintiffs
225 Broadway, Suite 1902
New York, NY 10007
Office: (212) 285-1400
Cell: (914) 819-3387
lbarbieri@advocatesny.com